DR. W. F. MONCRIEF v. V. T. LILLY and WATAUGA DE-VELOPMENT CORP.

Eastern Section.   December 19, 1931.

Petition for Certiorari denied by Supreme Court, June 5, 1932.

Cox, Taylor & Epps, of Johnson City, for appellants.
Edens & Edens, of Elizabethton, for appellee.

PORTRUM, J. The facts of this case are numerous and complicated; and so are the parties. However, there is but one complainant, and only one defendant has appealed to this court, but this does not wholly eliminate the confusion arising from the numerous parties in the lower court and the complicated pleadings and facts. Counsel consumed more than forty pages in a full statement of the case, but the court cannot give itself this latitude, it will state only such facts as reflect the issues to be determined by it.

In 1928, the appellant and defendant, Watauga Development Corporation, was the owner of a tract of land, subdivided for sale and development, in the City of Elizabethton, Tennessee. This is an industrial town, and at that time large industries were located there and it was necessary and profitable to buy up, subdivide, and resell real estate to meet the demands of a growing business and population. The plan of business of the Development Corporation was to buy up, subdivide and then appoint a real estate agency to sell the property to the public. The corporation's sole agent for this purpose was the firm of Trolinger & Trolinger, and we will state now that these agents were not made parties to this bill. These agents, without the knowledge or authority from the Development Corporation employed subagents to represent it, by calling upon other real estate agents and agreeing with them, if they would procure a customer, through Trolinger & Trolinger's office, to divide the commissions. Under this arrangement the Lilly Real Estate Company, a partnership (later incorporated), began a search for purchasers. The Lillys found a prospect in Dr. Moncrief, and of course, pictured to him a magic city arising on the waters of the Watauga, and under the shadow of the Unaka Mountains. Ada Mae Lilly, a woman, sang a siren song, he claims, and he broke his chain of better judgment to follow her. (He claims she courted him, and had him appointed an honorary member of a Bible class.)

He was too old to be completely ensnared and insisted the Lillys make him a proposition in writing; they wrote him the following letter:

"Lilly Real Estate Company,
"Elizabethton, Tennessee.
"April 5, 1928.
"Dr. W. F. Moncrief,
"Elizabethton, Tenn.
"Dear Dr. Moncrief: Following up our conversation with reference to you buying the two lots 43 and 44 of Block 2 of the Watauga

Development Corporation's property, will state that if you desire to purchase these lots, we will make you this proposition: In case you want to sell the lots before your first note comes due, which is six months, we will take them off your hands and pay you your money back with interest at the rate of 12% per annum, but we would require you, if you desire to release the lots in this way, to give us thirty days' notice before the six months' period expires.

"Doctor, we no not believe there will be any trouble in selling these lots for you before the six months is up, for at least $500 profit, and will be very glad, as soon as we sell out the few lots that the Watauga Development Corporation has left on Elk Avenue, to list these lots back to net you not less than $2500. Yours very truly,
"Lilly Real Estate Company,
"By V. T. Lilly."

Below the signature appears this notation: "The above obligation is in no way vitiated by the few days delay we have asked for in requesting it. October 15, 1928. (Signed) V. T. Lilly."

Upon receipt of this letter Dr. Moncrief consulted an attorney; he advised him it was a binding obligation of the real estate company when accepted by him. He then replied:
"Blank Dungan Building,
"Elizabethton, Tenn.
"April 10, 1928.
"Lilly Real Estate Company,
"V. T. Lilly, Representative,
"Elizabethton, Tenn.
"Dear Sirs: Yours of April 5th, offering to take lots 43 and 44, Block 2, Watauga Development Company, off my hands if purchased by me, and to pay me 12% interest per annum on my investment, provided the lots are not resold for me before the second payment is due, six months from date of sale, at a greater profit, release me and refund to me the money I invested, if I then wish to do so.

"Your proposition is hereby accepted, duly received and considered, I understand that if these lots are not sold at a satisfactory profit before the end of six months and I wish you to take them off my hands before the second payment is due on them I will give you thirty days' notice of the same. I hereby also agree to do this.
"Yours most sincerely,
"W. F. Moncrief."

These parties then procured from the owners' agents, Trolinger & Trolinger, a deed for the two lots, Nos. 43 and 44, duly executed by the owners. As the deed recites, Dr. Moncrief paid $1000 in cash and gave four notes of $750 each for the deferred payment,

secured by a deed of trust. No reference was made in this instrument to the agreement made between the Lillys and the purchaser.

In the month of May of the same year, the Lillys sold to Dr. Moncrief lots 28 and 29 of this subdivision, but these lots were not the property of the Development Corporation, but were individually owned by the Lilly Real Estate Company. On May 28th, like letters were exchanged in this transaction.

A decided boom in real estate in Elizabethton failed to develop in the next few months, and the first deferred payment for lots 28 and 29 fell due and the Lilly Real Estate Company threatened to enforce payment. The property had not been resold by these agents, and Dr. Moncrief gave them the stipulated thirty days' notice that he elected to resell to them under his contract and reclaim his money with 12% interest. For reasons not necessary now to state, the real estate company declined to abide by its contract.

On February 21, 1929, Dr. Moncrief filed his bill against the Lilly Real Estate Company, seeking to enforce the terms of his contract as evidenced by the letters, on the sale of lots 28 and 29. (No mention was made of lots 43 or 44. Some reference was made to this fact in the answer and cross-bill.) ·

On April 18, 1929, the complainant amended the original bill, setting out the contract in reference to lots 43 and 44, and seeking to enforce this contract against the defendant Lilly Realty Company, and individual members thereof, and among other things alleged:

"That the said defendants were very anxious to sell complainant the said two lots, courting him, giving him glowing accounts of the future of Elizabethton and of the natural increase of the value of property therein, and especially of these two lots, and guaranteeing that they would in the near future increase in value, seeing him from day to day and urgently pressing him to purchase said lots; that complainant was not satisfied with said defendants' glowing account of the future of said property, etc., and would not succumb to their persuasion and agree to purchase said property. That thereafter, on or about April 5, 1928, said defendants V. T. Lilly, Ada Mae Lilly and W. O. Lilly, in order to insure the purchase of these said lots by complainant and close the deal and thereby obtain for themselves a commission, submitted to complainant in writing a proposition in substance and fact as follows:" Here follows the two quoted letters above set out.

The prayer of the bill as amended is: "That said agreement as to lots 28 and 29 in Block 2, and as to lots 43 and 44 in Block 2, of Watauga Development Company's property be specifically per-

formed by order of your Honor and that all orders, injunctions, attachments of the person, and other process necessary to that end be made and awarded by your Honor and duly enforced.

"That complainant have a decree for $1000 and interest thereon at the rate of twelve per cent per annum from the date of May 28, 1928, against defendants J. S. Lilly, Minnie Lilly, V. T. Lilly, Ada Mae Lilly, W. O. Lilly and Lilly Real Estate Company, and that complainant have a decree for $1000 with interest thereon at the rate of twelve per cent per annum from the date of April 14, 1928, against defendants V. T. Lilly, Ada Mae Lilly and W. O. Lilly and the Lilly Real Estate Company."

"Grant general relief."

This amendment was answered by the parties made defendants, and proof was taken. As the case progressed the complainant changed attorneys, and on January 16, 1930, these attorneys filed an amended and supplemental bill for the first time making the Watauga Development Corporation a defendant. This pleading alleges:

"That lots Nos. 43 and 44 of Block No. 2 of said Watauga Development Corporation's addition to the City of Elizabethton, Tennessee, were owned by said corporation prior to April 14, 1928, and were listed with the defendants, V. T. Lilly, Ada Mae Lilly, W. O. Lilly and Lilly Real Estate Company, to be sold by these defendants as the agents of said Watauga Development Corporation, and that they were clothed with full and complete authority to do all and every act necessary to effect the sale of said lots for said Watauga Development Corporation, and that the agreement made by these defendants, hereinbefore set forth and described relative to the purchase of said lots 43 and 44 of Block No. 2 was made with the consent and approval of said Watauga Development Corporation, and that it ratified said act of these defendants and that they had the apparent and actual authority, as agents of the said Watauga Development Corporation, to enter into said agreement with complainant." The prayer of this pleading follows:

"That complainant have the same relief against Watauga Development Corporation from his said original and amended bill as if the said corporation had been made a party thereto, and that complainant be given a decree against said Watauga Development Corporation for the sum of $1000 with interest thereon from April 14, 1928, and that his four notes now owned and held by said Watauga Development Corporation be canceled and declared to be null and void, and that the deed for said lots 43 and 44, Block 2, and the deed of trust thereto be canceled and declared to be null and void, and that an injunction issue, etc."

In this pleading a great deal is said to excuse the complainant from his failure to make the Watauga Development Corporation a

party from the beginning; but the outstanding excuse is that counsel had just discovered a bond executed by a real estate company, under the Statutes of Tennessee, to protect the company's customer against its fraud. Under the original bill the complainant sued this real estate company, and its members, as the principal and sole obligator under the contract, and sought a specific performance of the contract. After the complainant changed his attorneys—not the attorneys appearing here—he changed his position, and filed a second amendment suing the Watauga Development Company as the principal obligator, and prays for an enforcement of the contract. This contradictory position in pleading is material now only to the extent that it reflects the real facts, as acknowledged by the complainant in his original bill, for all the facts alleged in his amendment were known to him then, except the statutory bond filed with the county court clerk.

Process was served upon an officer of the Watauga Development Corporation, but the suit was overlooked by it and no defense made for it, perhaps because of the death of one of its counsel, Mr. Ben Taylor. The case was finally prepared for trial and heard by the Chancellor.

The court held that the Lillys unduly exaggerated the business conditions, and property prices, representing facts that were not true, and by false representation induced the complainant to purchase these properties. He also held that this contract evidenced by these letters, was suspicious upon its face, and that the Lillys did not intend to carry out this agreement. That they were the agents representing the Development Corporation, in the sale of lots 43 and 44, and he rescinded the trade for the lots 43 and 44, and also lots 28 and 29, granting a recovery for the purchase money paid, declaring it a lien upon the lots respectively, and order a cancellation of the deeds and the notes representing the deferred payment. But before entering this decree he, upon his own motion, ordered the Clerk and Master to send a copy of the decree to the Watauga Development Corporation, doubtless, because he hesitated to put down a decree when he knew the defendant was ignorant of the proceeding.

Upon the receipt of this copy the Watauga Development Corporation, through its counsel, prepared a petition, accompanied with an answer and cross-bill, to set aside the decree and allow it a hearing upon the issues raised against it. The Chancellor allowed these papers to be filed and the taking of additional proof upon the main issue, as well as the issues raised under this last cross-bill, and reheard the case upon the record as then made.

Upon this hearing the Chancellor decreed as follows:

"On this the 29th day of May, 1931, after consideration of the whole record in the cause, the court is of the opinion and thus orders, adjudges and decrees that the petitioner, Watauga Development Corporation, can in no view succeed in enforcing its contract for the sale of the lots involved to the complainant. The court finds as a fact that the agent who negotiated the sale of the lots to complainant was guilty of fraud, the fact being clearly established; that Watauga Development Corporation knew nothing of the fraud practiced upon the complainant at the time, but it afterward learned the fact and it may not assert a contract tainted with fraud, for the reason that it attempted to do so after knowledge of the fraud practiced upon the complainant, it thereby ratified the fraud."

These facts and this fraud were discovered from this record after the Development Corporation had received a copy of the decree, heretofore referred to, and again attempts to enforce the sale of lots 43 and 44 by the cross-bill seeking a recovery for the deferred payment. It had not authorized its agents to employ a subagent to make a sale of its lots, and did not know that a subagent had been employed. Nor that the subagent had negotiated or had anything to do with the sale of the two lots, but if a stranger attempts to act for, and makes a contract for another, using fraud, and the other knowing of the fraud, attempts to enforce the contract, he is charged with the ratification of the fraud and has no standing in a court to enforce the fraudulent agreement.

"A principal may either ratify unauthorized acts or contracts made on his behalf by a mere stranger or volunteer who has never been his agent but who has assumed to act as such in the particular transaction, or he may ratify the act of one who is his agent for certain purposes, but who in the particular transaction acting outside the scope of his authority or after determination of his agency, whereupon the relation of principal and agent is created in respect to matters concerning which none before existed, and the act or contract thereby becomes as effectual as to the principal as though it had been previously authorized." Agency, 2 Corpus Juris, Sec. 83, p. 470.

"It is a well established rule of law that if one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as the agent of the latter, even though without any previous authority whatever, if the person in whose name the act was performed subsequently ratifies or adopts what has been done, the ratification relates back and supplies original authority to do the act. In such case the principal is bound to the same extent as if the act had been done in the first instance by his previous authority; and this is true whether the act be detrimental

to the principal or to his advantage, whether it sounds in contract or in tort." 21 R. C. L., page 922.

We recognize this principal as a sound one, but we call especial attention to the fact that the stranger or unauthorized agent must "not assume to act for himself." He must assume to act for a principal, and in the principal's name. At least he must assume to act for a principal, and the party with whom he deals must so understand it. Certainly the liberty to make an independent contract between the agent and the party with whom he deals is not restricted or prohibited by this principle of law, and we recognize that fraud can be practiced by the purchaser upon the seller of real estate, as well as by the seller upon the purchaser. If suspicious facts are brought home to the purchaser, and he should believe the seller is ignorant of these facts he should not act upon them in an attempt to bind the seller. Equity encourages fair dealings between man and man, and frowns upon concealment.

This suit is based upon the contract evidenced by the letter of April 5, 1928 (hereinbefore copied), and by the terms of this letter the agents did not assume to act for a principal, but were acting, and assuming to act for themselves. We believe, from the evidence, that Dr. Moncrief understood this and he assumed to contract with the agents. The very terms of this agreement, as evidenced by this writing, establishes a relationship between these agents and Dr. Moncrief in the nature of a quasi partnership arrangement, at least a mutual dealing in real estate of mutual benefit to the agents and Dr. Moncrief. He filed his bill and prayed for relief upon this theory, and only changed his position after he had employed new counsel. After he had changed his position it was necessary for him to advance a different state of facts to entitle him to recover, and he is in no position to do that without contradicting the facts as alleged by him in his original bill and first amendment thereto. We are of the opinion that this was an independent agreement between the real estate company and Dr. Moncrief, and the purchase of the property from the Watauga Development Corporation was a distinct transaction.

We do not think there was any fraud or misrepresentation shown in the sale of lots 43 and 44, and certainly no such representations were relied upon. Dr. Moncrief swore to this allegation: "Complainant was not satisfied with said defendants' glowing account of the future of this property, et cetera, and would not succumb to that persuadure and agree to purchase said property. That thereafter, and on or about April 5, 1928, said defendants (naming them), in order to insure the purchase of these said lots by complain-

ant and close the deal and thereby obtain for themselves a commission, submitted to the complainant a written proposition . . ."

Since the complainant has sworn that he did not rely upon the representations, but upon the contract, then this court will not hold that he was injured by the representations, if false, and that this fraud was such as could be ratified by the Watauga Development Corporation, by its attempt to enforce payment of the deferred payments in the sale of these two lots.

The Chancellor was of the opinion that the letter was suspicious upon its face; we think so, for no reasonable man should be mislead in thinking that the owner of property would make a sale of it under such terms. An agent, to earn a commission, might enter into a contract gambling upon the advance in realty prices, but a person who was attempting to sell property outright would not make such an agreement.

We think the Chancellor erred in rescinding the deeds for lots 43 and 44 of Block 2 and in dismissing the petition and cross-bill. There was no fraud which was relied upon by the purchaser, in reference to these lots, and nothing to ratify it. The contract for the repurchase or resale of these two lots was made in the name of a realty company, who did not assume in that transaction to act for the Watauga Development Corporation, and the purchaser, Dr. Moncrief, did not believe the agents were assuming to act for the Development Corporation, so the Development Corporation is not concerned with this provision. It is entitled under its cross-bill to enforce collection of the deferred payments for the two lots, and a decree will be entered here against the maker of the notes for the amount due, the recovery declared a lien upon the property, and unless paid in thirty days, the property will be sold to satisfy a recovery. The case will be remanded for this purpose, and also to make the trustee under the trust deed a party in order to divest title out of him, if he is not now a party defendant. One-half of the cost of the cause, at the time of the first decree, was adjudged against the Watauga Development Corporation as a condition for permitting it to intervene in the cause, this cost will not be disturbed; the cost taxed to date against the Watauga Development Corporation, with the aforesaid exception, is retaxed against the complainant, Dr. Moncrief, together with the costs of the appeal, the cost arising under the cross-bill of the Watauga Development Corporation will be hereinafter adjudged, unless the recovery is paid within thirty days, then it is taxed against the complainant, Dr. Moncrief. To save the court further directions to the clerk in drafting the decree, counsel representing the parties are requested to draft the decree.

Snodgrass and Thompson, JJ., concur.